## UNITED STATES LIGHT & HEATING CO. v. SAFETY CAR HEATING & LIGHTING CO.

(Circuit Court of Appeals, Seventh Circuit.   October 1, 1912.   On Petition for Rehearing, January 8, 1913.)

### No. 1,870.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BRUSH MECHANISM FOR DYNAMOS.

The Bliss patent No. 707,754, for a brush mechanism for dynamos, claim 6, which is a broad claim, is void for anticipation in the prior art. Also *held* not infringed, if conceded validity after the filing of disclaimer in October, 1912.

### On Petition for Rehearing.

2. PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—REVIEW BY APPELLATE COURT—EFFECT OF DISCLAIMER.

A Circuit Court of Appeals, which had adjudged a claim of a patent invalid, may grant relief to the complainant by authorizing the enforcement of any equities arising out of a disclaimer filed before the issuance of its mandate, intended to avoid the ground of invalidity found.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suit in equity by the United States Light & Heating Company against the Safety Car Heating & Lighting Company. Decree for defendant, and complainant appeals. On rehearing. Affirmed.

For opinion below, see 191 Fed. 846.

The appellant is complainant below in a bill filed charging infringement of its patent No. 707,754, issued to W. L. Bliss August 26, 1902, for "brush mechanism for dynamos," and the appeal is from a decree dismissing the bill for want of equity. The invention and its use are thus mentioned in the specifications:

"My invention relates to brush mechanism for dynamos, with the object in view of providing automatically for the constant polarity of a dynamo in whichever direction it may rotate and notwithstanding changes or reversal of the direction of the rotation.

"The invention may be applied to all dynamos the direction of the rotation of which is required to be or liable to be reversed, but the polarity of which is required to be constant; but it is especially applicable to dynamos deriving motion from running-gear of railway vehicles for the purpose of charging storage batteries or furnishing a direct electrical current for the illumination of such vehicles."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The drawings exhibited are referred to as follows:

"Figure 1 is a view in vertical section from front to rear through the casing of the dynamo, showing the supports for the rotary armature and commutator and the brush-holder in relation thereto as it appears in use; and Fig. 2 is a transverse section taken on the plane of the line *A A* of Fig. 1, the front cover of the casing being removed."

The claims are 12 in number, but the charge of infringement is limited to the sixth (and broadest) claim which reads as follows:

"(6) Brush mechanism for dynamos comprising a rotary ring, a stationary ring, a raceway intermediate of the two rings, bearing-balls located in said raceway and serving to hold the rings in rotatable relation with each other, brush-holders carried by the rotary ring and means for limiting the rotatory movement of the said rotary ring, substantially as set forth."

Two defenses are set up: (1) Invalidity of the above claim in suit; and (2) noninfringement thereof under any reasonable interpretation of such claim.

Upon final hearing of the issues before Judge Kohlsaat, his opinion, as filed, sustains the defense of noninfringement. It presents an instructive review, as well, of the patent specifications and of the contentions for and against the validity of the claim relied upon, as follows:

"The patent has 12 claims, of which claim 6 may be termed the broadest. The device 'is specially applicable to dynamos deriving motion from running-gear of railway vehicles for the purpose of charging storage batteries or furnishing a direct electrical current for the illumination of such vehicles.' The dynamo comprises the casing, the armature structure, including associated armature, shaft and commutator, and brush mechanism. Complainant's counsel claim a brush construction which constitutes a unitary and easily removable device. By the removal of the plate *i* in the casing, the brush-carrier may be inserted and removed. By means of a removable plate in the bottom of the casing, the brushes may be manipulated and the armature blocked in position, when desirable, in order to remove the hub formed in the casing from the axle pressure. 'The brush-carrier,' according to the specification, p. 1, line 59, 'consists of an annular inner ring *j*, upon which are secured and properly insulated therefrom the brush-holder *k*. The inner ring *j* has a semicircular groove or ball-race *l* formed on its periphery. The inner ring *j* is mounted within an outer or stationary ring *m*, having on its

inner wall a semicircular groove or ball-race. The outer ring m may be held securely in position within the front opening in the casing a back of the cover b by permitting the outer portion of its inner face to rest against an annular flange n, formed around the margin of the opening in the casing, and its outer face engaged by an annular flange o, extending from the inner face of the cover b. The pressure of the cover on the outer ring may be secured by means of one or more screws p, extending through its margin into the flange n of the casing.'

"According to complainant, the primary function of the balls in the raceway is to lock the two rings in position, although the usual benefits of a ball-bearing are incidentally secured.

"With regard to the stop mechanism, it is stated in the specification, p. 2, line 20, that 'the reciprocating rotary movement of the inner ring j, carrying the brushes, is limited by means of a stop-pin u, having a screw-threaded engagement with the cover b and extending inwardly within a curved slot v, formed in the ring j. The length of the slot v is such as to permit the ring j to rock the required distance to shift the brushes and give the necessary lead, and in the present instance, where the machine is a four-pole machine, this distance is equal to or a little more than a quadrant.'

"When the armature is reversed, the rotary ring, carrying the brushes, through frictional contact of the brushes with the commutator, will be moved therewith, until intercepted by the stop-pin. This rotary movement of the brushes will cause them to exchange position with relation to the commutator, causing the polarity of the brushes to remain constant.

"The reversal of the direction of the current results, in the main, from change in the running direction of the car, from whose axle the dynamo is driven. Such reversal in the running direction of the car causes a reversal of the dynamo armature, and, necessarily, a reversal of the direction of the current, unless prevented. If a reversal of direction in rotation is accompanied by a proper reversal of the brush position, the two reversals, says complainant's expert, Miller, 'will, so to speak, counteract each other, so that the current will flow from the dynamo in the same direction as before.' The proper position for the brushes in a dynamo running in one direction is somewhat off of the theoretical axis of commutation; the neutral points being shifted slightly in the direction of rotation. The angle between the two points is termed the 'angle of lead.' In making allowance for this angle of lead, it is necessary that the brushes be swung around the commutator a sufficient distance to make the substitution of position of brushes plus the angle of lead. In a four-pole device this would be 90° plus a small angle. This idea is, of course, not new with complainant.

"Defendant denies the validity of the patent in suit, and in support of its contention cites Bliss' prior patent No. 525,836, granted September 11, 1894, for a self-adjusting brush for dynamo-electric machines; Crompton & Swinburne patent No. 5168, of 1886, for improvements connected with the electric lighting of trains; Ball patent No. 675, of 1891, for a new improved regulator for electric generators and motors; Lake patent No. 11,133, of 1891, for improvements relating to dynamo-electric machines and electric motors and to apparatus connected therewith; Ball patent No. 444,487, dated January 13, 1891, for regulator for dynamo-electric machines; Wheeler patent No. 575,918, of June 26, 1897, for brush-carrier for dynamo-electric machines; Vicarino patent No. 662,580, of November 27, 1900, for apparatus for electrically lighting railway carriages, etc.; Philfeldt patent No. 327,408, of September 29, 1885, for ball-bearing for velocipedes; and Herman patent No. 426,271, of April 22, 1890, for fifth wheel.

"The earlier Bliss patent No. 525,836 has the brush-carrier, commutator, and stop mechanism arranged so as to reverse the position of the brushes. The brush-carrier is in the form of a cross-bar, having an opening at its center to receive a hub or sleeve which supports the axle of the generator. This sleeve is stationary. There is no roller-bearing between the cross-bar and the sleeve. The two rings, the one stationary and the other rotatable, of the patent in suit, it is claimed, serve the same purpose as the inner surface of the cross-bar opening and the exterior periphery of the sleeve-bearing.

Complainant concedes that the latter patent involves the principle of the former, but insists that it constitutes an improvement thereof, so as to secure superior as well as new results. These latter consist, in part, in the facility afforded for removing the brush-carrying ring with brush-holders attached, and for providing ready access to the brushes; this being desirable in cases where the casing is secured beneath the floor of a car or other vehicle. The new features, as compared with the device of the earlier patent, seem to consist of the casing with its removable plates, the substitution of a rotatable brush-carrying ring in lieu of a rotatable brush-carrying arm, a nonrotatable outer ring, co-operating with the inner rotatable ring instead of the axle-bearing sleeve or hub; the latter having been transferred to the casing, and being no part of the brush device, and ball-bearing and locking between the rings secured through the raceway, constructed by grooving the inner face of the outer nonrotatable ring and the periphery of the inner rotatable ring.

"Complainant insists that the use of the raceway and balls for locking the two rings together is new in the dynamo art. There is also the alleged novel adjustments of the parts, which constitute a unitary brush mechanism without which the openings in the casing would be of little value.

"None of the elements is, in itself, new, though complainant insists that the locking feature of the raceway and balls is not shown to have been specifically claimed in the prior art. Roller bearings are shown in the R. E. Ball British patent No. 675, of 1891, as an anti-friction device between two rings, one rotatable and one stationary, and 'serving to hold the rings in rotatable relation with each other.'

"In the British patent to Lake, No. 11,133, of 1891, is shown a brush-holder which includes in its elements a support mounted upon anti-friction rollers, which travel in a cylindrical groove, forming the bearing between the arm and the journal.

"Roller bearings between brush-carrying rings and a stationary frame are shown in Wheeler patent No. 575,918, of 1897, and in other patents above enumerated.

"A fair construction of the two Ball patents, the Herman patent No. 426,-271, of 1890, the Philfeldt patent No. 327,408, pertaining to velocipedes, the Lake British patent of 1891, and Wheeler patent No. 575,918, of 1897, relating to a brush-holding device, makes it plain that there is little novelty in the locking or guiding feature of the raceway and balls as an independent element. Nor is there novelty in the large rotatable ring, if that may be said to be a feature of claim 6. It is found in the Wheeler patent No. 575,918, above cited. The means of the Bliss patent for gaining access to the brush mechanism is one not involving in itself any invention. So, as above stated, the novelty must be found, if it exists, in the combination of old elements. This may not be deduced from a more convenient arrangement than that of the prior art, but in a new result—the outcome of a new conception as applied to the brush mechanism art.

"To cease to use the bearing-sleeve as an element of the brush-carrier necessitated the addition of a new brush-carrier bearing—an additional element. Were the nonrotatable sleeve or hub of the prior Bliss patent enlarged to the dimensions assumed to (be) called for by the patent in suit, thereby necessitating a large rotatable ring to co-operate with it, that would scarcely be ground upon which to predicate invention. Nor would the interposition of an anti-friction device tend to create patentable novelty. The substitution of two bearings for one would, of itself, not amount to invention. In the patent in suit the inner ring is rotatable. In the prior Bliss patent it is the outer ring which rotates. That modification is not patentable. The claim in suit makes no mention of the relative location of the two rings with regard to which is rotary and which stationary. Nor does it call for rings of any particular size. While this is true, yet there is shown substantial advancement upon the prior art in the arrangement of the parts, largely due to mechanical skill, but possessing a degree of novelty which, in an art so subtle as that here involved, should be recognized as patentable, but so limited as to protect only the particular device of the patent. With this qualification the claim sued on is held to be valid.

"Defendant's brush-holder is carried by a rotary yoke mounted upon a bearing formed integrally on the main end-bearing casting. This, defendant insists, is exactly like the bearing which complainant's expert Miller depicts in the drawing, 'Miller sketch of brush-shifting mechanism of the prior art.' It cannot be removed as a unit. The whole end plate must first be removed. This carries the brush-carrier, which must therefore not be a part of a unitary body. In defendant's device the brush mechanism is not removed functionally from the sleeve or hub which carries the generator axle, and is not independent thereof. Defendant's structure seems to resemble somewhat the devices of the Ball and Lake patents in the matter of bearings. This feature alone would relieve it from a charge of infringement of the claim in suit as above limited. There are other differences, such as the absence of a removable bottom plate and stop. The complainant fails to show infringement. The bill is therefore dismissed for want of equity."

W. Clyde Jones, Arthur B. Seibold, and Edwin B. H. Tower, Jr., all of Chicago, Ill., for appellant.

Frederick P. Warfield and C. H. Duell, both of New York City, N. Y., and H. S. Duell, of Yonkers, N. Y., for appellee.

Before BAKER and SEAMAN, Circuit Judges, and HUMPHREY, District Judge.

SEAMAN, Circuit Judge (after stating the facts as above). [1] The Bliss patent in suit, No. 707,754, is for "brush mechanism for dynamos," disclosing an obvious improvement of the patentee's earlier invention, shown in patent No. 525,836, issued in 1894; and it may well be assumed for the present consideration, as contended by counsel in support thereof, that "the structure of the second patent constitutes an ingenious reorganization of the structure of the first patent." Its specifications set forth 12 claims, while the charge of infringement in controversy is predicated alone on the sixth claim, which reads:

"Brush mechanism for dynamos comprising a rotary ring, a stationary ring, a raceway intermediate of the two rings, bearing-balls located in said raceway and serving to hold the rings in rotatable relation with each other, brush-holders carried by the rotary ring and means for limiting the rotatory movement of the said rotary ring, substantially as set forth."

The defense of invalidity, for alleged anticipations of the means thus claimed, is directed solely to the broad terms of the sixth claim, and raises no question affecting the other claims of invention in the structure as described in the specifications. Thus the issue of validity —elaborately discussed in the arguments of counsel—is narrowed to the inquiry whether invention appears to authorize monopoly over any "brush mechanism for dynamos comprising" the elements described in this claim.

The invention of the patent and its application are thus stated at the outset of the specifications:

"My invention relates to brush mechanism for dynamos, with the object in view of providing automatically for the constant polarity of a dynamo in whichever direction it may rotate and notwithstanding changes or reversal of the direction of the rotation.

"The invention may be applied to all dynamos the direction of the rotation of which is required to be or liable to be reversed, but the polarity of which is required to be constant; but it is especially applicable to dynamos deriving motion from running-gear of railway vehicles for the purpose of

charging storage batteries or furnishing a direct electrical current for the illumination of such vehicles."

These general definitions of the subject-matter are applicable to the earlier Bliss patent, without reference to other prior patents in evidence, and the novelty of the structure thereafter described must reside in the improved means and results produced in the above-mentioned "reorganization" of the prior structure. For analysis of such means as specified, we are content to refer to the description contained in the opinion filed by Judge Kohlsaat, as appended to the foregoing statement; and we concur in his conclusion that patentable invention may appear in the provision and arrangement of elements in the device of the patent, although not of the broad nature and scope contended on behalf of the appellant.

We do not understand, however, the invention thus assumed to be applicable for support of the sixth claim in suit. The stress of the contention therefor rests on the provisions of the device for access to the parts and removability (bodily), for correction or repair, as thus pointed out in the specifications:

"Among the prominent advantages of the structure hereinabove set forth special attention is called to the simple manner in which the brush-carrying ring, with brush-holders attached thereto, may be bodily removed from the front of the casing by simply removing the cover $b$ and releasing the outer ring $m$ from the casing, the conductors $y$ and $y'$ having been previously disengaged from their binding-posts by the operator working through the opening in the bottom of the casing covered by the plate $i$. The opening $h$ in the bottom of the casing furthermore admits of the operator inserting a support under the armature $c$ to block it in position to permit the cover $b$, with its bearing-hub $e$, to be slid off the shaft without permitting the latter to be displaced or strained by the removal of the bearing-hub $e$. The removable plate $i$ also furnishes ready access to the brushes without removing any part of the structure except the stop-pin $u$ and the release of the conductors $y$ $y'$, since the removal of the stop $u$ permits the disk $j$ to be turned completely around, bringing each of the brushes into position to be manipulated through the opening $h$ in the bottom of the casing. This is of very great importance where the casing is secured beneath the floor of a car or close to a ceiling where access at frequent intervals can only conveniently be had from beneath." *

In respect of these provisions and features of the device, neither of them is fairly defined in any element or elements of claim 6, while each and every thereof is aptly embraced in other of the patent claims; and it is obvious that the claim in question is framed to exclude the use of the several elements thus named, or their equivalents, in any brush mechanism for dynamos, as patentable subject-matter, independent of the above-mentioned provisions.

We are impressed with the view that the elements of the claim constituting the brush-holder mechanism are anticipated by the earlier Bliss patent, within the broad sense on which the claim must rest, leaving only the provision and use of the well-known anti-friction means of ball-bearings for its differentiation therefrom in such sense. But, whatever may be deemed the force of that patent, for the purposes of the inquiry, we believe the Wheeler patent in evidence (No. 575,918, issued in 1897, for a "brush carrier for dynamo-electric ma-

chines"), in like sense, discloses every element of claim 6. Its specification states:

"My invention relates to a means of mounting the brushes of a dynamo-electric machine so that the lines of contact are visible, the brushes easily removable, and that the connecting-cables may be dispensed with and the brushes can be simultaneously thrown off from or onto the commutator. In order to effect this, I mount the brushes on two rings insulated from each other and mounted on the frame of the machine at the inner end of the commutator, and carriers on the rings extending over the commutator, on which the brushes are mounted. I also provide means for moving the rings around to set the brushes and a system of connecting rods to lift all the brushes at once. The two ends of each of these connecting-rods are separate pieces of metal adjustably united by a turnbuckle of insulating material."

As shown by specifications and drawings (Fig. 1), the brushholder consists of two rings, one stationary and the other rotary. Its inner rotary ring $k$ carries the brushes. The outer ring $b$ is stationary, and with its guides $n$ and grooved rollers $m$ interposed in the rotary ring permits the rotation, while preventing lateral movement; and its shifting screw $o$ limits the movement of the rotary ring. Thus every element mentioned broadly in claim 6 is met by this patent, inclusive of the anti-friction means of grooved rollers, as the well-known equivalent of "bearing-balls," located and used alike. As may well be observed, the important features of the casing and mountings (for access and removability) are not mentioned therein, but are expressly included as subject-matter in various other claims of the patent.

We are of opinion, therefore, that other patents and exhibits cited by way of defense do not require discussion; that the foregoing reference is sufficient for anticipation of the broad claim in suit; and that such claim cannot be upheld for support of the charge of infringement, so that the issue raised of infringement thereof in fact by the appellee's brush mechanism does not require consideration.

The decree of the Circuit Court, dismissing the bill for want of equity, conforms to the foregoing conclusion of law; and it is affirmed.

## On Petition for Rehearing.

The appellant, having petitioned for a rehearing of the above-entitled appeal, wherein the opinion of the court, filed at the present term, directs affirmance of the decree below, further petitions for relief in the cause, predicated on an alleged disclaimer filed by the appellant in the Patent Office subsequent to the filing of the above-mentioned opinion herein. A certified copy of the instrument referred to is produced, which describes the patent in suit, and thereupon purports to disclaim as follows:

"Your petitioner therefore hereby enters its disclaimer to so much of claim 6 of said patent as may describe a brush mechanism in which the stationary ring is not separable from the armature with its commutator and from the body of the field magnet casing, so that the brush mechanism may be bodily removed without dismembering the rotary and stationary rings and the bearing-balls which lock or tie them together, and in which the means for limiting the rotary movement of the rotary ring is not such as to permit movement sufficient to change the respective positions of the brushes with relation to the commutator to cause the polarity of the brushes to remain constant, regardless of the direction of rotation of the armature of the dynamo. Thereby limiting said claim 6 to a brush mechanism in which the stationary ring is separable from the armature with its commutator and from the body of the field magnet casing, so that the brush mechanism may be bodily removed

without dismembering the rotary and stationary rings and the bearing-balls which lock or tie them together, and in which the means for limiting the rotary movement of the rotary ring is such as to permit movement sufficient to change the respective positions of the brushes with relation to the commutator to cause the polarity of the brushes to remain constant, regardless of the direction of rotation of the armature of the dynamo."

SEAMAN, Circuit Judge (after stating the facts as above). [2] Relief is sought by the appellant's petition to escape the ruling of this court for affirmance of the decree below by reopening the cause for hearing upon the effect of a disclaimer filed by the appellant in the Patent Office pending the mandate upon the appeal. An objection is urged that this court is without jurisdiction to authorize such relief, because it is founded on new matter "appearing in the case for the first time," and that it "is an original matter which should be determined by the District Court prior to any consideration thereof" herein. But we believe such contention to be untenable. If the disclaimer set up in the petition affords ground for relief in the present cause, it can be granted only through action (by leave or otherwise) of the appellate court, as the authority of the District Court after appeal becomes limited to execution of the mandate (In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994); and no doubt is entertainable that relief may be authorized by this court to enforce any equities arising under a disclaimer so presented. See American Soda Fountain Co. v. Sample, 136 Fed. 857, 70 C. C. A. 415.

The question, therefore, whether the disclaimer set up in the petition presents equitable ground for reopening the cause plainly arises for determination before issuance of the mandate. On behalf of the appellee it is contended that the instrument filed as a disclaimer is not authorized, within the meaning of the statute (sections 4917, 4922, Rev. St. [U. S. Comp. St. 1901, pp. 3393, 3396]), "since it does not disclaim any distinct part of the specification or claim of the patent in suit, but disclaims merely the interpretation of the claim which this court has held to be necessary." Without specifying any distinct claim or part thereof as surrendered, the disclaimer, so called, is plainly framed and directed to incorporate in the claim the appellant's interpretation of various elements of the "brush mechanism" there mentioned, so that the claim shall be read in conformity with the meaning for which its counsel contended throughout the argument on the appeal for reversal of the decree. For answer to the crucial inquiry above stated, however, we believe it to be unnecessary to determine either the sufficiency or effect of this instrument by way of ascertaining the meaning or force of the claim in controversy. So no discussion is required of the various contentions of counsel, either as to the effect thereof, or whether the ruling in our opinion, as heretofore filed, against the validity of such claim is consistent with the present disclaimer, or could rightly be affected thereby.

Laying aside all of these questions as to the force of the disclaimer to require interpretation of the claim, for relief under the petition, we may assume, for the purpose alone of the present inquiry, that it is not only effective to that end, but affixes a definition of the terms of the claim which furnishes support for its validity, notwithstanding

the prior patents referred to in our opinion. The benefit of this assumption, however, cannot relieve the claim of the limitations imposed by the prior art evidence, and that evidence in the record we believe to be conclusive for the narrow scope of any invention which may thus be found in the claim, as the opinion below (upholding its validity) clearly points out, with references to the prior patents. With the claim so limited in the monopoly which may thus be predicated thereon, the appellee's "brush mechanism" in evidence is plainly distinguished from the patent device, departing therefrom in several means and functions, so that, under the above hypothesis, these departures, as sufficiently referred to in the opinion filed below, furnish ample support for dismissal of the bill.

Irrespective, therefore, of our conclusion against the validity of the claim in suit, the petition to reopen the cause is denied; and the petition for a rehearing is likewise overruled.